**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WEILI CAO-BOSSA,

                                  Plaintiff,                1:18-CV-1009

        - v -                                          (LEK/CFH)

LINDSAY PULCHER, KATHLEEN
ELFELDT, LISA RUSSEL,

                                 Defendants.

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**

Weili Cao-Bossa
1912 East Country Club Drive
Schenectady, New York 12309
Plaintiff pro se

## REPORT-RECOMMENDATION & ORDER

### I. In Forma Pauperis Application

       Plaintiff pro se Weili Cao-Bossa commenced this action on August 22, 2018 with the filing of a complaint and, in lieu of this Court's filing fee requirement, a motion to proceed in forma pauperis. Dkt. Nos. 1 ("Compl."), 2. The undersigned has reviewed plaintiff's IFP application and determines that she may properly proceed IFP.[1]

### II. Initial Review of Complaint

---

[1]    Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs she may incur in this action, including, but not limited to, copying fees and witness fees.

The Supreme Court of the United States directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain her complaint before permitting him to proceed with her action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, this does not mean the Court is required to accept unsupported allegations devoid of sufficient facts or claims. Pleading guidelines are provided in the Federal Rules of Civil Procedure ("Fed R. Civ. P"). Specifically, Rule 8 provides that a pleading which sets forth a clam for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ;

> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).   However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citations omitted).


**A.  Allegations in Complaint**

Plaintiff contends that dhe was discriminated against insofar as dhe was terminated from er employment as a senior accountant trainee from the Department of Labor after six months of employment, despite receiving positive evaluations.  See

3

generally Compl.  Plaintiff began employment with "DOL" on October 6, 2016, and was terminated on April 15, 2017, "based on two defamatory evaluations stating I was so incompetent that I should be terminated." Id. at 1.  Plaintiff also contends she is aggrieved because, before she began her employment in October 2016, she was forced to decline a position as senior accountant trainee which she interviewed for on July 13, 2016, as she was told she "became ineligible for the position only because there was a better candidate," one with "more working experience that they wanted to hire." Id. at 2.  Further, plaintiff provides that, during her employment, defendants treated her differently from other employees by terminating him rather than providing her with a warning and opportunities to improve, despite allowing other employees who made mistakes this option. Id.

Plaintiff contends that defendants "defamed" her in their evaluations and by terminating her despite previous positive evaluations and feedback.  Compl. at 7.  Further, plaintiff contends that "Defendants could not be held personally responsible for their wrong doings under Act VII, I would like to sue them under tort law and want them personally liable for their misconducts."  Compl. at 9.  Plaintiff states that defendants "committed intentional torts and the HR persons were negligent when coming to due process." Id.

### C.  Initial Review of Complaint

### A.  Title VII

Arguably, plaintiff intends to bring this workplace discrimination complaint

pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, <u>et</u>

<u>seq.</u> and the Civil Rights Act of 1991 ("Title VII").[2]   There is no indication in the

Complaint whether plaintiff commenced a claim before the Equal Employment

Opportunity Commission ("EEOC").   In order to commence an action in federal Court

pursuant to Title VII, a plaintiff "must file a charge of discrimination with the EEOC

'within one hundred eighty (180) days 'after the alleged unlawful employment practice

occurred,' or within three hundred (300) days of the alleged discrimination if the

claimant 'has initially instituted proceedings with a state local agency[,]' and receive a

'right-to-sue' letter from the EEOC prior to commencing a suit in federal court."   <u>McNight</u>

<u>v. Dormitory Auth. of State of N.Y.</u>, 995 F. Supp. 70, 76 (N.D.N.Y. 1998) (quoting 42

U.S.C. § 2000e-5(e)).   Only after a plaintiff brings a discrimination claim before the

EEOC and obtains a right to sue letter may the plaintiff bring an action for relief in

federal court.  42 U.S.C. § 2000e-5(e); <u>Seale v. Madison Cty.</u>, 929 F. Supp.2d 51, 65

(N.D.N.Y. 2013).   A plaintiff must bring the federal court action within ninety (90) days

of receiving a right to sue letter.   <u>Cornwell v. Robinson</u>, 23 F.3d 694, 706 (2d Cir. 1994)

("[A] suit must be commenced not more than 90 days after receipt of the right-to-sue

letter").   "It is well settled that if a plaintiff does not file suit within 90 days of receiving

the EEOC's right-to-sue letter, the action must be dismissed, unless extraordinary

circumstances have been established."   <u>Banks v. Avis Budget Grp.</u>, 16-CV-1320

(MAD/DJS). 2018 WL 922147, at *2 (N.D.N.Y. Feb. 15, 2018), <u>appeal dismissed by</u> 2d

---

[2]  Plaintiff does not identify Title VII on his civil cover sheet.  Instead, she indicates that the "U.S. Civil Statute under which [she is] filing" is "tort law."  Dkt. No. 1-1 at 1.  On Page 9 of his complaint, plaintiff refers to "wrong doings under Act VII," which appears to be a reference to Title VII.  Compl. at 9.

Cir (Jun. 28, 2018) (citing <u>Skibinski v. Zevnik, Horton, Guibord, McGovern, Palmer & Fognani, LLP</u>, 57 F. App'x 900 (2d Cir. 2003) (summary order)). "'The filing deadline for the formal complaint is not jurisdictional and, like a statute of limitations, is subject to equitable tolling[, which] is only appropriate in rare and exceptional circumstances.'" <u>Id.</u> (quoting <u>Zerilli-Edelglass v. N.Y. City Transit Auth.</u>, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks and citations omitted)).

First, as indicated, plaintiff does not provide whether she timely filed a complaint before the EEOC, received a right to sue letter, or commenced this action within ninety days of receipt of that right to sue letter, but even if the Court assumes she had met all of these requirements (or that equitable tolling applies), it is unclear whether this federal action would be timely. Plaintiff allege that she was terminated on April 15, 2017. The only adverse action she discusses beyond her termination is being forced to decline a position in June 2016. Thus, if plaintiff timely commenced an EEOC claim, he would have to commence it within 180 days of the alleged discriminatory conduct, her termination, by October 12, 2017. 42 U.S.C. § 2000e-5(e)). If she commenced a proceeding with a state agency, she would have to commence an EEOC proceeding within 300 days from her termination, or by February 9, 2018. 42 U.S.C. § 2000e-5(e)). Based on this time line, it is possible that, if plaintiff did receive a right to sue letter, she commenced this action within ninety days after receipt of that letter. However, as the complaint is completely silent as to whether plaintiff timely filed a complaint before the EEOC, received a right to sue letter, and timely commenced this action, due to plaintiff's <u>pro</u> se status, it is recommended that plaintiff's Title VII claim be dismissed

without prejudice and with opportunity to amend to allow plaintiff to provide such information.

Second, it is well settled that Title VII is "directed toward employers, not individual natural persons who are not themselves employers, at least absent separate intentional misconduct." Bramesco v. Drug Computer Consultants, 834 F. Supp. 120, 123 (S.D.N.Y. 1993) (citing Miller v. Maxwell's Intern., Inc., 991 F.2d 583 (9th Cir. 1993). Thus, there is no claim under Title VII against individual employees or supervisors. Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (citation omitted); Guerra v. Jones, 421 F. App'x 15 (2d Cir. 2011) (summary order). Therefore, it is recommended that, insofar as plaintiff may be attempting to assert a Title VII claim against defendants Pulcher, Elfeldt, and Russel, these claims be dismissed with prejudice and without leave to amend as to these individual defendants, but without prejudice to plaintiff amending his complaint to potentially name a proper defendant or defendants.

Third, plaintiff has failed to plead sufficient facts to state a claim for discrimination under Title VII. Title VII provides that it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff is required to demonstrate that he (1) is a member of a protected class; (2) was qualified for the position in question; (3) suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. St. Mary's Honor Ctr. v.

Hicks, 509 U.S. 502, 506, (1993); Abrams v. Dept. of Pub. Safety, 764 F.3d 244, 251-52 (2d Cir. 2014).

Here, plaintiff has failed to allege any membership in a protected class. Title VII provides that it protects against employment discrimination "because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not contend that she was discriminated against or terminated because of her race, color, religion, sex, or national origin. Further, plaintiff has also failed to show that her termination "occurred under circumstances giving rise to an inference of discrimination" on the basis of her membership in a protected class. St. Mary's Honor Ctr., 509 U.S. at 506. Even under the most liberal interpretation of plaintiff's complaint, nothing plaintiff has alleged suggests that her termination was based on discrimination that is prohibited under Title VII. Thus, although it is a de minimus standard at this stage, Bartz v. Agway, 844 F.Supp. 106, 112 (N.D.N.Y. 1994), even applying special solicitude, the complaint neither raises nor infers any such claim. Thus, the undersigned concludes that plaintiff has failed to allege a Title VII claim as his complaint does not allege that her termination/discrimination was based on a protected class and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Ruston v. Town Bd. of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("Under Iqbal, factual allegations must be sufficient to support necessary legal conclusions," and must "plausibly suggest an entitlement to relief.").

Fourth, plaintiff's Title VII claim also must fail because she has not shown that she was treated differently than "other similarly situated employees, outside of the

protected class, who engaged in conduct substantially similar to that of plaintiff but received preferential treatment." Vanhorne v. N.Y.C. Transit Auth., 273 F. Supp.2d 209, 216 (E.D.N.Y. 2003). Although plaintiff contends that other employees were given warnings rather than be terminated after they made mistakes, Compl. at 6, this claim does not suffice because plaintiff does not identify herself as a member of a protected class, contend that she was discriminated against because of her membership in a protected class, or contend that these other employees were not members of the protected class and that their conduct was substantially similar to hers.

Accordingly, as plaintiff has failed to demonstrate that she timely brought an EEOC complaint, obtained a right to sue letter, and then commenced this action within ninety days of obtaining the right to sue letter, this claim must be dismissed. It is recommended that the claim be dismissed without prejudice and with opportunity to amend should plaintiff be able to demonstrate that she timely brought a discrimination claim before the EEOC, obtained a right to sue letter, and then commenced this case within the ninety-day time frame. Recognizing that caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to address the sufficiency of plaintiff's allegations, Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir.1983), it is recommended that the dismissal of plaintiff's Title VII claim be without prejudice to plaintiff filing an amended complaint such that he may attempt to cure the defects by (1) identifying whether she was discriminated against based on her membership in a protected class and identifying that class, (2) alleging whether she was treated differently from other

9

similarly-situated employees who were not members of the protected class, (3) naming a proper defendant, *and* (4) demonstrating whether she exhausted her administrative remedies by timely filing a claim with the EEOC, obtaining a right to sue letter, and timely commencing this action. However, as noted and discussed above, because plaintiff has not named any proper defendants to proceed against in a Title VII action, the claims against the named defendants Pulcher, Elfeldt, and Russel must be dismissed with prejudice.

### B. Due Process

Plaintiff's only mention of a due process violation is as follows: defendants "committed intentional torts and the HR persons were negligent when coming to due process." Compl. at 9. Plaintiff's claim would appear depend on whether she has a constitutionally-protected liberty interest in continued employment with the Department of Labor. See generally Meyers v. Kishimoto, 217 F. Supp.3d 563, 577 (D. Conn. 2016).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972). "The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other

reasons." Id. at 573, n.12. "In order to be stigmatized enough to be deprived of liberty, a dismissed employee must be accused of something more than unsatisfactory job performance." Brito v. Diamond, 796 F. Supp. 754, 757 (S.D.N.Y. 1992). This type of § 1983 liberty interest claim is referred to as a "stigma plus"[3] claim. Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005).

Here, plaintiff has failed to set forth any facts to suggest that she was "stigmatized" by his termination such that she was deprived of a constitutional liberty interest under the due process clause of the Fourteenth Amendment.

> [W]hile it is possible to state a due process claim on a "stigma plus" theory, such a claim requires plausible allegations of: (1) a defamatory statement; (2) "some tangible and material state-imposed burden in addition to the stigmatizing statement"; and (3) a lack of process adequate to justify the state's action. Velez v. Levy, 401 F.3d 75, 87-88 (2d Cir. 2005) (internal quotation marks and ellipsis omitted). To allege a defamatory statement, a plaintiff must allege a public statement injurious to the plaintiff that is capable of being proven false and that was false.

Campanella v. Cty. of Monroe, 853 F. Supp. 2d 364, 383-84 (W.D.N.Y. 2012) (citations omitted). Although plaintiff uses the word "defamatory" in reference to her evaluations, she makes no claim of a *public* defamatory statement. Further, it is possible that an Article 78 proceeding is available for plaintiff, an apparent at-will employee, to address his liberty interest claim. See generally Segal v. City of New York, 459 F.3d 207, 281 (2d Cir. 2006). However, in light of special solicitude, it is recommended that this

---

[3] "'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." Segal, 459 F.3d at 209 (quoting DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003)).

potential procedural due process claim be dismissed without prejudice and with opportunity to amend to provide additional facts necessary to assess whether plaintiff can properly assert a "stigma plus" claim.

### C. Potential State Law Claims

As the undersigned concludes that plaintiff's complaint fails to set forth a federal claim, it is appropriate for the Court to decline to exercise its supplemental jurisdiction over plaintiff's potential state law claims.  Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996) (noting that a court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it had original jurisdiction); Chenensky v. N.Y. Life Ins. Co., 942 F. Supp. 2d 388, 395 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction where no federal claims remained). However, as the undersigned is recommending that plaintiff be permitted an opportunity to amend to attempt to set forth a valid federal claim, for purposes of efficiency, the undersigned reviews the potential state law claims below.

### 1. New York State Human Rights Law

Arguably, plaintiff may be attempting to set forth a claim pursuant to the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296(6).  See, e.g., Kercado-Clymer v. City of Amsterdam, 370 F. App'x 238, 242 n.1 (2d Cir. 2010) (summary order) (noting that the District Court properly dismissed Title VII claims against individual supervisor, as individuals are not subject to liability under Title VII, but

observing that individual liability may lie under the NYHRL).    NYHRL provides, "it shall

be an unlawful discriminatory practice for any employer . . . to discriminate against such

individual in compensation or in terms, conditions, or privileges of employment."  N.Y.

Exec. Law § 296(1)(a).   "Because New York courts require the same standard of proof

for claims brought under the NYH[R]L as for those brought under Title VII," those claims

may be analyzed together.  Leopold v. Baccarat, Inc., 174 F.3d 261, 264, n.1 (2d Cir.

1999) (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1304 n.4 (2d Cir. 1995), abrogated

on other grounds by Burlington Indus. v. Ellerth, 524 U.S. 742 (1998)).  Thus, for a

prima facie claim of discrimination under the NYHRL, plaintiff still must plead

membership in a protected class and discrimination based on that membership, which

includes race, national origin, or sex.  N.Y. Exec. Law §296(1)(a).

However, unlike under Title VII, under the NYHRL a plaintiff may allege claims

against an individual defendant as an aider or abettor of NYHRL violations.  Seale, 929

F. Supp.2d at 69.   "In order for a plaintiff to recover against an aider or abettor of

NYHRL violations, she must establish '(1) that she engaged in conduct protected by the

NYHRL; (2) there is a causal connection between the protected conduct and the

alleged [violations] of the NYHRL; and (3) that [the defendant] 'actually participated' in

the discrimination.'"  Id. (quoting Beattie v. Guilderland Cent. Sch. Dist., 124 F.Supp. 2d

802, 805 (N.D.N.Y. 2000)).  To demonstrate aidor or abettor liability, "an employee is

not individually subject to suit as an aider or abettor under the NYHRL 'if he is not

shown to have any ownership interest or any power to do more than carry out

personnel decisions made by others.'"  Id.  Conduct protected by the NYHRL includes

an employee making a complaint of discrimination, either formal or informal, to a superior based on a reasonable belief that the underlying challenged actions for which the employee complains was a violation of the law. Summa v. Hofstra Univ., 708 F.3d 115, 126 (2d Cir. 2013); Mi-Kyung Cho v. Young Bin Café, 42 F. Supp.3d 495, 507 (S.D.N.Y. 2013) (quoting Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13, 786 N.Y.S.2d 382, 819 N.E.2d 998 (N.Y. 2004)) ("Protected activity within the meaning of the NYSHRL . . . is conduct that 'oppos[es] or complain[s] about unlawful discrimination.'").

Here, plaintiff makes no argument that she was a member of a protected class, that he was discriminated against on the basis of her membership in a protected class and/or her engagement in conduct protected by the NYHRL, or that he ever complained to management about being discriminated against. Further, she has offered no proof that any of the defendants had the "power to do more than carry out personnel decisions made by others" to allow for potential aidor/abettor liability against the individual defendants. Seale, 929 F.Supp. 2d at 69.

As plaintiff has failed to set forth sufficient allegations to suggest any claim of discrimination under the NYHRL, even under the liberal standard at this early stage, plaintiff's complaint fails to set forth a claim under the NYHRL. However, keeping in mind plaintiff's pro se status, it is recommended that plaintiff be permitted an

opportunity[4] to amend this claim.[5]

## 2. Defamation

Plaintiff contends that defendants defamed her by writing negative performance evaluations.  See generally Compl.  It appears plaintiff is attempting to set forth a state law defamation claim pursuant to New York State common law and this Court's supplemental jurisdiction.  In order to state a claim for defamation under New York State law, a plaintiff must demonstrate an "unprivileged publication" of this information to a third party.  See, e.g., Lore v. City of Syracuse, 583 F. Supp. 2d 345, 383 (N.D.N.Y. 2008).  Further, a plaintiff "must plead in [his] complaint the particular words giving rise to [his] claim."  Id. (citing N.Y. C.P.L.R. § 3016(a) (2008)).  Thus, even if the undersigned were to construe this portion of the complaint as if as brought under New York State common law, "negative internal assessments cannot support a claim for defamation."  Chimarev v. TD Waterhouse Investor Services, Inc., 99 F. App'x 259, 263 (2d Cir. 2004) (summary order).

Here, plaintiff appears to suggest that defendants' negative performance evaluations amounted to defamation because she disagrees with the truth of the comments contained therein.  However, plaintiff appears to refer to internal work

---

[4]   The undersigned reminds plaintiff that even if she cures the defects in her state law claims, she may be permitted to proceed only if she can set forth a sufficient federal law claim such that this Court may determine whether to exercise supplemental jurisdiction over the state law claims, including the potential NYHRL claim.

[5]   "Unlike Title VII, the NYSHRL . . . do[es] not require exhaustion of administrative remedies" prior to commencing a claim under the NYSHRL.  Manos v. Geissler, 377 F. Supp. 2d 422, 428 (S.D.N.Y. 2005).

evaluations completed within the course of her employment.  He does not contend that

any defendants ever "published" these evaluations to a third party – such as any

individual or entity outside of the Department of Labor.  Further, plaintiff does not

identify the exact words he claims to have been defamatory.  Accordingly, as plaintiff

has failed to set forth a claim for defamation, it is recommended that this claim be

dismissed.  However, due to plaintiff's <u>pro se</u> status, because the undersigned is

recommending that plaintiff be provided an opportunity to amend her complaint as to

her potential federal claims, it is also recommended that she be permitted an

opportunity to amend any potential defamation claim in an attempt to cure the defects

identified herein.


### 3.  Contract Claim

Plaintiff states that his termination "violated the implied covenant of good faith

and fair dealing."  Compl. at 6.  Plaintiff provides no other information or context for this

claim.  Potentially, plaintiff seeks to bring a contract claim under New York State

common law.   As it is currently alleged in the complaint, plaintiff's potential contract

claim must fail.  First, plaintiff appears to have been an at-will employee.  "It is settled

law in New York that absent an agreement establishing a fixed duration, an

employment relationship is presumed to be a hiring at will, terminable at any time by

either party for any reason or no reason." <u>Bartz</u>, 849 F. Supp. at 167 (citing <u>Mycak v.

Honeywell, Inc.</u>, 953 F.2d 798, 801 (2d Cir. 1992)).  Plaintiff does not contend that she

was employed pursuant to an enforceable employment contract, and further, in addition

to his being an at-will employee, the facts alleged provide that plaintiff was a probationary employee at the time of his termination.  Compl. at 1.  Accordingly, as plaintiff fails to set forth a claim for a breach of the covenant of good faith and fair dealing, it is recommended that this claim be dismissed with prejudice, but without prejudice to plaintiff seeking to address this claim in state court should he wish to do so.[6]

### 4.  Tort Claim

Plaintiff indicates that she wishes to proceed "under tort law" against defendants as they committed "intentional torts" when they terminated him.  Compl. at 9.  As indicated above, plaintiff appears to have been an at-will employee.  The law is clear in New York that there is "no tort claim for wrongful discharge . . . of an at-will employee."  Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 304 (N.Y. 1983).  Further, an at-will employee cannot use a prima facie tort claim as a "bootstrap" to circumvent the lack of a tort claim for wrongful discharge or deficient pleadings merely by alleging that the termination was motivated solely by a desire to harm the plaintiff."  Evans v. Excellus Health Plan, Inc., No. 6:11-CV-1248 (LEK/DEP), 2012 W L 3229292, at *5 (N.D.N.Y. Aug. 6, 2012)  (citation omitted).[7]  Further, even if plaintiff's potential tort

---

[6]  The undersigned reaches no conclusion as to the success or merits of this potential claim.  See generally Buerly v. Ithaca Coll., 290 F.Supp. 2d 301, 305 n. 5 (N.D.N.Y. 2003) ("Moreover, New York law does not recognize a claim for breach of implied covenant of good faith and fair dealing when an identical claim for breach of contract is also pled.") (citing ARI & Co., Inc. v. Regent Int'l Corp., 273 F.Supp. 2d 518, 521-22 (S.D.N.Y. 2003)).

[7]  All unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff pro se.

claim was not barred by her at-will status, his claim must fail because "[m]erely labelling a defendant's conduct malicious or wanton is insufficient; the plaintiff must allege facts sufficient to demonstrate that a defendant's sole motivation for the damaging acts was a malicious intention to injure the plaintiff." Id. at *6 (internal citations omitted). Accordingly, it is recommended that plaintiff's apparent tort claim for her termination be dismissed with prejudice.

### 5. Department Procedures

Plaintiff's complaint states that her evaluations "were against procedures which the defendant was supposed to follow" insofar as they "list[ed] problems in detail" but there was "no communication before or after the evaluation." Compl. at 6. Further, plaintiff contends that his termination "violated the termination policy so blatantly with support from above," apparently because plaintiff's supervisor "would not know how to set [her] up." Id. at 3. Insofar as plaintiff suggests that his evaluations or termination violated some internal department or state policy or procedure for evaluations, discipline, or termination, such violations would not amount to a constitutional claim or violation of any federal law. If plaintiff contends that there was a certain policy or procedure in place and defendants failed to follow it, it would appear that plaintiff could only seek review of these claims only through an Article 78 proceeding before a state supreme court. See, e.g., Byerly v. Ithaca Coll., 290 F.Supp. 2d 301, 305 (N.D.N.Y. 2003). Accordingly, insofar as plaintiff seeks to set forth a claim for violations of departmental procedures, it is recommended that such claim be dismissed with

prejudice, but without prejudice to plaintiff seeking to pursue this claim in state court should she choose to do so.[8]

### III. Conclusion

Wherefore, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's application to proceed In Forma Pauperis (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED**, that the potential Title VII claims against the named defendants be **DISMISSED with prejudice**, but that the dismissal be **without prejudice to plaintiff amending his complaint should he wish to cure the other defects** identified in this claim; and it is further

**RECOMMENDED**, that plaintiff's potential due process claim be **DISMISSED without prejudice**, and it is further

**RECOMMENDED**, that plaintiff's potential New York State Human Rights Law claim be **DISMISSED without prejudice and with opportunity to amend**; and it is further

**RECOMMENDED**, that plaintiff's potential state law defamation claim be **DISMISSED without prejudice and with opportunity to amend**; and it is further

**RECOMMENDED**, that plaintiff's potential state law contracts claim be **DISMISSED with prejudice and without opportunity to amend**, but without prejudice

---

[8] The undersigned reaches no conclusion as to the success or merits of this potential claim.

to plaintiff pursuing the claim in state court; and it is further

**RECOMMENDED**, that plaintiff's potential state law torts claim be **DISMISSED with prejudice and without opportunity to amend**, but without prejudice to plaintiff pursuing the claim in state court; and it is further

**RECOMMENDED**, that plaintiff's potential claim relating to violation of department or state procedures be **DISMISSED with prejudice and without opportunity to amend**, but without prejudice to plaintiff pursuing the claim in state court, and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the adoption of the Report-Recommendation and Order to file an amended complaint, and if plaintiff fails to file an amended complaint within thirty (30) days from the adoption of the Report-Recommendation and Order, the case be closed without further Order of the Court, and that if plaintiff does file an amended complaint within thirty (30) days from the adoption of the Report-Recommendation and Order, the Clerk of the Court is to return the case to the Magistrate Judge for review of the amended complaint,

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."

20

N.Y.N.D. L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[9]

Dated: November 8, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9]  If you are proceeding pro se and are served with this Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).